## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GAVIN EDWARD ALLEN,**

     **Plaintiff,**

     **v.**                           **CASE NO.  24-3047-JWL**

**BRIAN BELLENDIR, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Gavin Edward Allen is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Barton County Jail in Great Bend, Kansas ("BCJ").  The Court granted Plaintiff leave to proceed in forma pauperis.

As Count I, Plaintiff alleges the denial of his First Amendment right to practice his religion and to address grievances. (Doc. 1, at 4.)  As Count II, Plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment and a due process violation.  *Id.*  As Count III, Plaintiff alleges violations of K.S.A. §§ 21-4009[1] and 21-5801[2], Barton County Resolution 1991-19, and the Barton County Detention Center Inmate Handbook.  *Id.* at 5.

---

[1]  Kan. Stat. Ann. § 21-4009 was transferred to Kan. Stat. Ann. § 21-6109.  Section 21-6109 is titled "Kansas indoor clean air act; smoking in enclosed areas or public meetings; definitions."
[2]  Kan. Stat. Ann. § 21-5801 is a criminal statute dealing with theft.

In support, Plaintiff alleges that the Defendants "granted themselves a dispensation over statutory legislative authority and the constitutional rights of [the] disenfranchised to advance their clandestine activities." *Id*. at 4, 7.  Plaintiff alleges that the Barton County Sheriff and his deputies have "devised prohibited training methods to conduct illegal searches and seizures of citizens and their property, manufactured false arrest reports, tamper[ed] with evidence by deactivating or not activating at all federally mandated required officer body-worn cameras, intending to conceal their criminal conduct." *Id*. at 7.

Plaintiff alleges that Community Corrections Officers, sanctioned by Amy Boxberger, "fabricate[] bogus violation reports and fraudulent arrest warrants to support their criminal conspiracy, to prevent public outcry and absolve themselves from criminal charges effectively shift[ing] blame to an unsuspecting citizen." *Id*.

Plaintiff alleges that Rita A. Sunderland, Assistant District Attorney, circumvents due process procedures by either signing her name instead of a "legally bound Judge," or impersonates a judge by forging their signature "to secure fraudulent warrants defiantly practicing the same illegal acts that recently Federal indicted Community Corrections Officers Amy Boxberger and others did." *Id*.  Plaintiff alleges that the state court judges sanctioned this activity. *Id*.

Plaintiff alleges that prisoners are subjected to dangerous and hazardous living conditions at the BCJ. *Id*. at 8.  He claims there are "second hand tobacco vapors" and black mold in the showers. *Id*.  He also claims the jail should be "retrofit" to comply with "tornado classification standards." *Id*.  Plaintiff claims that "jail house snitches" and "police sources" receive preferential treatment through the payment of tobacco products, Christian religious materials, and low bail amounts. *Id*. at 8–9. Plaintiff also claims there is a "methodical, sophisticated

scheme" involving a "financial labyrinth type shell game" involving kickbacks and proceeds from over-priced and "off-the-book" sales of commissary items and co-pay fees for medical services. *Id*. at 8. Plaintiff asserts that this is done to "shore up" unseen profits to compensate for deputies' thefts "and extravagant staff parties." *Id*.

Plaintiff alleges that on December 8, 2023, Defendant Alexandria Mason, Deputy Sheriff, was Plaintiff's arresting officer and searched Plaintiff's vehicle and stole $3105[3] from Plaintiff. *Id*. at 2, 9. Plaintiff alleges that Defendant Brian Bellendir, Sheriff, "sanctions his deputies' illegal misconduct and misappropriation of funds." *Id*. at 1. Plaintiff alleges that Defendant Richard Allen, Barton County Sheriff's Office Sergeant, excluded items from his Vehicle Impound Authorization Report to cover up the theft of Plaintiff's money. *Id*. at 3. Plaintiff alleges that Defendant Bryan Freeman, Correctional Officer, manufactured Plaintiff's property inventory "and forged what was suppose[d] to be the Plaintiff['s] signature to further cover-up the theft." *Id*. Plaintiff claims that Defendant Sgt. Doug Parks, jail administrator at the BCJ, sanctions thefts and cover-ups through the denial of grievances. *Id*.

Plaintiff alleges that Defendant Amy Boxberger, Plaintiff's Community Corrections Supervisor, "scheduled an in-person visit under the guise of 'early termination' and stole the Plaintiff['s] court ordered cost payments." *Id*. Plaintiff claims that Defendant Rita A. Sunderland, Assistant District Attorney, "forged a judge signature to change case numbers to further cover-up the theft and get rid of exculpatory evidence (vehicle/iphone)." *Id*. Plaintiff also claims that Sunderland used "childlike, crude scribbling workmanship to change the case numbers on an invalid, defective warrant." *Id*. at 9.

---

[3] Plaintiff alleges on Page 2 of his Complaint that Deputy Sheriff Mason stole $3105 from him, and on Page 9 he claims she stole $3255 from Plaintiff.

Plaintiff names Barton County Judge Steve Johnson as a defendant, claiming he is the judge covering all criminal malfeasance when it enters a judicial court.  *Id*.at 3.  Plaintiff claims that the state court judges—Judge Johnson and Magistrate Judge Richard Burgess—did not take action when each of them, as well as the District Attorney's Office, violated the Kansas Rules of Professional Conduct.  *Id*. at 10.  Plaintiff alleges that the judges allowed numerous continuances in Plaintiff's case "to withhold testimony in an evidentiary hearing to hide the theft of Plaintiff['s] court ordered cost[s] by Amy Boxberger of $3105.00, until the case expired."  *Id*. Plaintiff alleges that Judge Johnson ordered an excessive bail "[t]o silence any discovery of evidence" and "in retaliation of exposure of criminal conduct to the public."  *Id*.

Plaintiff names as defendants:   Brian Bellendir, Barton County Sheriff; Alexandria Mason, Barton County Deputy Sheriff; Richard Allen, Sergeant, Barton County Sheriff's Office; Amy Boxberger, Community Corrections Supervisor; Bryan Freeman, Correctional Officer; Rita A. Sunderland, Assistant District Attorney; Steve Johnson, Barton County District Judge; and Doug Parks, Sergeant/Jail Administrator, BCJ.   Plaintiff seeks compensatory and punitive damages, and "criminal charges appropriate to the actions of the defendants."  *Id*. at 6.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### A.  Rules 18 and 20

Plaintiff has set forth unrelated claims in his Complaint. Plaintiff asserts property claims, claims regarding his state criminal proceedings, and claims regarding the conditions at the BCJ. Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R.

6

Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."  *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be

severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### B. *Younger* Abstention

Plaintiff makes several allegations regarding his state court criminal proceedings, including excessive bail, continuances, and the withholding of evidence.  To the extent Plaintiff seeks relief related to his criminal case, the Court is prohibited from hearing Plaintiff's claim under *Younger v. Harris*, 401 U.S. 37, 45 (1971).  "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain."  *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

Here, the first condition is met because Plaintiff's state criminal proceedings are pending. *See State v. Allen*, Case No. 2023-CR-300061 (Barton County District Court, filed December 20, 2023) (status conference scheduled for April 26, 2024, pretrial scheduled for May 10, 2024, and

trial scheduled for June 3–5, 2024).  The second condition for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts.  *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44).  Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies.  *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).

### C.  Property Claims

Plaintiff alleges that money was taken from his vehicle during or after his arrest.  Plaintiff's property claim is subject to dismissal.  Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy.  A due process claim will arise only if there is no such procedure or it is inadequate.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy.  *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable.  Because an adequate, state post-deprivation remedy exists, Plaintiff must show good cause why his property claim should not be dismissed for failure to state a claim.

### D.  Improper Defendants

#### 1.  County Prosecutor

Plaintiff names the county prosecutor as a defendant.  Plaintiff's claims against the county prosecutor fail on the ground of prosecutorial immunity.  Prosecutors are absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Plaintiff's claims concerning his criminal case fall squarely within the prosecutorial function.  Plaintiff is directed to show good cause why his claims against the county prosecutor should not be dismissed based on prosecutorial immunity.

#### 2.  State Court Judge

Plaintiff names a state court judge as a defendant.  State court judges are entitled to personal immunity.  "Personal immunities . . . are immunities derived from common law which attach to certain governmental officials in order that they not be inhibited from 'proper performance of their duties.'" *Russ v. Uppah*, 972 F.2d 300, 302–03 (10th Cir. 1992) (citing *Forrester v. White*, 484 U.S. 219, 223, 225 (1988)).

Plaintiff's claims against the state court judge should be dismissed on the basis of judicial immunity.  A state judge is absolutely immune from § 1983 liability except when the judge acts

"in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity.  *Stump*, 435 U.S. at 356–57.  Plaintiff alleges no facts whatsoever to suggest that the defendant judge acted outside of his judicial capacity.  Plaintiff should show good cause why his claims against the state court judge should not be dismissed.

### E.  Failure to State a Claim

#### 1.  First Amendment Violations

Plaintiff alleges a violation of his First Amendment rights based on the practice of his religion and his right to file grievances.  Plaintiff fails to indicate in his Complaint how Defendants infringed his right to practice his religion.  He provides no supporting facts for this claim.  This claim is subject to dismissal for failure to state a claim.

Plaintiff also fails to state a claim regarding his grievances.  Plaintiff acknowledges that a grievance system is in place and that he used it.  Plaintiff's claims seem to focus on his dissatisfaction with responses to his grievances.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v.*

*Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the grievance process are subject to dismissal for failure to state a claim.

### 2. Eighth Amendment

Plaintiff has also raised claims regarding his conditions of confinement at the BCJ. Plaintiff alleges that he has been subjected to "vapors" from secondhand smoke and that the showers at the BCJ have mold.  The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id*.  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97,

103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of

the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted). Plaintiff does not indicate how long he was exposed to the vapors or mold, but he attaches his medical request where he states that he stays in his cell throughout the day to avoid inhaling the vapors, "[t]he food trays sometimes reek[] of tobacco fumes," and that he has "[e]ven found tobacco bits and pieces in the food." (Doc. 4–1, at 4.) Therefore, it appears that Plaintiff is not subject to the vapors while in his cell, and he does not indicate where he is exposed to them.

Plaintiff failed to indicate whether he complained about the conditions at the BCJ, and if so, to whom and when. Plaintiff fails to allege that any named defendant was personally responsible for the alleged unsafe conditions. It is also unclear how long Plaintiff was exposed to the alleged conditions. Plaintiff alleges no facts showing that a defendant "both knew of and disregarded an excessive risk to [his] health or safety" related to the presence of vapors or mold. *See Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 794 (10th Cir. 2013) (where prisoner claimed he was exposed to mold causing an allergic reaction, court found that he failed to show defendant knew of and disregarded an excessive risk to his health or safety despite his claim that defendant had a duty to inspect the prison facility but failed to do so). A "bare allegation of [the presence of] mold . . . does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)).

Plaintiff's complaints regarding the conditions of his confinement at the BCJ are subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 3.  State Statutes, County and Prison Regulations

Plaintiff references violations of Kansas statutes, a Barton County Resolution, and the Barton County Detention Center Inmate Handbook.  Violations of state law, prison regulations, or agreements with contractors, do not provide a cause of action under § 1983.  Plaintiff must state a federal constitutional violation.  State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States. *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Likewise, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).  As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007).  Plaintiff's claims based on state statutes, county regulations and jail regulations are subject to dismissal for failure to state a constitutional violation.

### 4. Personal Participation

Plaintiff must also show how each named defendant personally participated in the deprivation of his constitutional rights.  Plaintiff cannot rely on the supervisory status of a defendant.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)).  Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

"[A] failure-to-train claim may not be maintained . . . without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Valdez v. Macdonald*, 64 F.4th 796, 813 at n.14 (10th Cir. 2023) (citations omitted); *see also Estate of Burgaz v. Bd. of Cty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022) ("[T]o be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation.") (citations omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force").

### F.  Request for Relief

Plaintiff seeks to have criminal charges brought against the Defendants. This Court

cannot order criminal charges and is not authorized to direct state or federal prosecutorial authorities to bring a criminal case against any of the defendants. *See Presley v. Presley*, 102 F. App'x 636, 636–37 (10th Cir. 2004) (holding that any federal court order for "investigation or prosecution of various people for various crimes" would "improperly intrude upon the separation of powers"); *see also State ex rel. Rome v. Fountain*, 678 P.2d 146 (Kan. 1984) ("[A] private individual has no right to prosecute another for crime and no right to control any criminal prosecution when one is instituted. Thus, the philosophy of this state has always been that a criminal prosecution is a state affair and the control of it is in the public prosecutor.") (citation omitted).

## IV.  Motion for Order to Show Cause

Plaintiff filed a motion (Doc. 4) seeking entry of an order to show cause why a preliminary injunction and temporary restraining order should not be entered.  The document purports to be a proposed order for the Court to sign setting a show cause hearing for Defendants to show cause why a preliminary injunction should not be issued.  The proposed order references Plaintiff's exposure to secondhand smoke and seeks to restrain Defendants from using or selling any and all tobacco products inside the BCJ.  (Doc. 4, at 2.)  Plaintiff attaches a section of the BCJ Handbook that provides under "Major Offenses" that all tobacco products are prohibited with the exception of e-cigarettes and inmate workers.  (Doc. 4–1, at 5.)  Plaintiff attaches his medical request where he states that he stays in his cell throughout the day to avoid inhaling the vapors, "[t]he food trays sometimes reek[] of tobacco fumes," and that he has "[e]ven found tobacco bits and pieces in the food."  (Doc. 4–1, at 4.)

Plaintiff also mentions Sgt. Parks' "indefinite restriction of outside library books" and RLUIPA.  *Id.* at 2.  Plaintiff attaches a request to Sgt. Parks relating to Plaintiff's request to the

Barton County Library for "any legal book."  (Doc. 4–1, at 2.)  In his response, Parks indicates that he does not know anything about the book and that it was his understanding that Plaintiff has since received the book.  *Id*.  Parks then states that "[t]here will be no more outside library books allowed in the facility."  *Id*.

The Court has found that Plaintiff's Complaint is subject to dismissal.  The relief Plaintiff seeks in his motion and the facts he asserts in support are not included in his Complaint.  The Defendants have not been served and the Court will not be setting this matter for a hearing on Plaintiff's proposed show cause order.  Plaintiff's motion is denied.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[4] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

---

[4] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (24-3047-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion seeking entry of an order to show cause why a preliminary injunction and temporary restraining order should not be entered and seeking to set a show cause hearing (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **May 17, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 17, 2024**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated April 18, 2024, in Kansas City, Kansas.**

> <u>**S/  John W. Lungstrum**</u>
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**