IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GAVIN EDWARD ALLEN,

      **Plaintiff,**

v.	CASE NO. 24-3047-JWL

BRIAN BELLENDIR, et al.,

      **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. At the time of filing, Plaintiff was in custody at the Barton County Jail in Great Bend, Kansas ("BCJ"). Plaintiff is currently housed at the Rice County Law Enforcement Center in Lyons, Kansas ("RCLEC"). The Court granted Plaintiff leave to proceed in forma pauperis. On April 18, 2024, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons stated in the MOSC, or to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 11). The Court's screening standards are set forth in the Court's MOSC.

**I. Nature of the Matter Before the Court**

As Count I of his Amended Complaint, Plaintiff alleges that Defendants failed to protect him from serious harm and failed to respond reasonably to protect him. (Doc. 11, at 3.) As Count II, Plaintiff alleges that Defendants denied Plaintiff the necessary accommodations to engage in activities for the practice of his religion. *Id*.

Plaintiff alleges that on December 8, 2023, he informed BCJ booking officer Bryan Freeman that Plaintiff felt unsafe in the BCJ because of secondhand smoke and "prior

experiences of how jail officials and prisoners treat Muslim prisoners." *Id*. at 3, 8. Plaintiff requested protective custody from Cpl. Christine Smith on December 10, 2023, and she responded that Plaintiff did not deserve that. *Id*. at 8.

Plaintiff alleges that approximately two weeks later, Correctional Officer Samantha Flour "inflamed other prisoners against Plaintiff" by telling them that "he thinks he is special." *Id*. That night, Plaintiff informed CO Flour that he did not feel safe because of her statement and she denied his request to be placed in protective custody. *Id*.

Plaintiff alleges that the next day, Cpl. Jared Vonveldt informed Plaintiff that the protective custody unit was full, but he was ordering Plaintiff to remain housed in the B-Pod alone. *Id*. He also informed Plaintiff that he would get Plaintiff a trustee worker job. *Id*. Plaintiff informed Vonveldt that he felt unsafe and would like to speak to the Sheriff to be moved to protective custody. *Id*. Vonveldt did not move Plaintiff to protective custody, but said he would email the Sheriff. *Id*.

Plaintiff alleges that from December 8, 2023 to April 17, 2024, he was exposed to secondhand smoke from prisoners and staff using tobacco products throughout the entire jail. *Id*. at 9. Plaintiff alleges that he filed multiple grievances seeking to be moved to a non-smoking unit and his requests were denied. *Id*.

Plaintiff states that on April 8, 2024, he mailed a letter to Sheriff Bellendir explaining Plaintiff's mistreatment inside the BCJ, stating that as a Muslin Plaintiff did not smoke tobacco and would like to be placed in a non-smoking unit, and stating that Plaintiff feared for his safety. *Id*. Plaintiff alleges that on April 12, 2024, Sgt. Doug Parks announced to the entire BCJ via electronic memo that he was suspending sales of tobacco products inside the jail. *Id*. He also ordered BCJ staff to discontinue their usage. *Id*.

Plaintiff alleges that on April 14, 2024, BCJ staff conducted a "shake-down cell search" looking for contraband. *Id*. at 10. Plaintiff claims that Cpl. James Allen informed prisoners that Plaintiff was the cause behind the tobacco sales suspension. *Id*.

Plaintiff alleges that on April 15, 2024, Cpl. Christine Smith ordered Plaintiff to return to his cell and bring her a knee brace that was seen in his cell. *Id*. Plaintiff alleges that he complied and when he had the knee brace in his hand to take to Cpl. Smith, Plaintiff was confronted by another prisoner "to give the knee brace to him or [Plaintiff] would be assault[ed]." *Id*. Plaintiff argues that he refused, and the prisoner "approached Plaintiff in a threatening gesture of assault and to prevent harm Plaintiff proactively defended himself from assault." *Id*. Plaintiff claims he was then placed in protective custody and disciplinary segregation without being afforded a due process hearing to contest the disciplinary sanctions. *Id*. at 10–11. On April 17, 2024, Plaintiff was transferred to the RCLEC for his protection. *Id*. at 11.

Plaintiff argues that Defendants' refusal to place him in protective custody, to allow him to practice his religion, and to end his exposure to secondhand smoke, amounts to deliberate indifference to an unreasonable risk of serious harm in violation of the Fourteenth Amendment and the Religious Land Use and Institutionalized Person Act ("RLUIPA"). *Id*.

Plaintiff names BCJ staff as defendants and seeks declaratory relief, an injunction "ordering defendants to stop the sale and use of any tobacco products inside the Barton County Detention Center", compensatory damages in the amount of $1,000, and punitive damages in the amount of $25,000. *Id*. at 5, 12.

## II. DISCUSSION

### 1. Request for Relief

Plaintiff seeks declaratory and injunctive relief against staff at the BCJ. The Court

previously denied Plaintiff's request for injunctive relief, finding that:

> Plaintiff is no longer housed at the BCJ. Plaintiff's request for injunctive relief is moot. Plaintiff is currently confined at the RCLEC. Because Plaintiff's request relates solely to alleged wrongdoing on the part of BCJ employees, the Court would be unable to provide Plaintiff with effective relief and his request for injunctive relief is moot.
>
> "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).
>
> The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer confined at the BCJ, his request for injunctive relief is moot and therefore denied.
>
> Likewise, "[a] claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant[.]" *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *see also Church v. Polis*, 2022 WL 200661, at *4 (10th Cir. Jan. 24, 2022) ("But declaratory-judgment claims become moot if circumstances change such that the defendants are not 'actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights.'") (citation omitted).

(Doc. 10, at 2–3.)

Based on the same reasoning set forth in the Court's prior order, the Court finds that Plaintiff's requests for declaratory and injunctive relief are denied.

### 2. First Amendment Violations

Plaintiff alleges a violation of his First Amendment rights based on the practice of his religion. As Count II, Plaintiff alleges that Defendants denied Plaintiff the necessary accommodations to engage in activities for the practice of his religion. The Court found in the MOSC that Plaintiff failed to indicate in his Complaint how Defendants infringed his right to practice his religion, and that he provided no supporting facts for this claim. The Court found that the claim was subject to dismissal for failure to state a claim.

Plaintiff's Amended Complaint fails to cure the deficiencies noted in the MOSC. The Amended Complaint likewise fails to indicate how Defendants infringed on his right to freely practice his religion and he provides no supporting facts for this claim. Plaintiff's claim based on his right to practice his religion is denied for failure to state a claim.

### 3. Conditions of Confinement/Failure to Protect

Plaintiff claims that staff at the BCJ failed to protect him from serious harm and failed to respond reasonably to protect him. The Court found in the MOSC that Plaintiff attached his medical request where he states that he stays in his cell throughout the day to avoid inhaling the vapors, "[t]he food trays sometimes reek[] of tobacco fumes," and that he has "[e]ven found tobacco bits and pieces in the food." (Doc. 4–1, at 4.) The Court found that it appeared that Plaintiff was not subjected to the vapors while in his cell, and that he failed to indicate where he is exposed to them. The Court also found that Plaintiff failed to indicate whether he complained about the conditions at the BCJ, and if so, to whom and when. The Court found that Plaintiff

failed to show that a defendant "both knew of and disregarded an excessive risk to [his] health or safety" related to the presence of vapors.  The Court found that Plaintiff's complaints regarding the conditions of his confinement at the BCJ were subject to dismissal for failure to state a claim of cruel and unusual punishment.

In his Amended Complaint, Plaintiff argues that his deliberate indifference claims are based on Defendants refusal to place him in protective custody, to allow him to practice his religion, and to end his exposure to secondhand smoke.  The Court has already found that Plaintiff fails to state a claim regarding the practice of his religion.

Plaintiff argues that Defendants refused to place him in protective custody and failed to end his exposure to secondhand smoke.  Plaintiff alleges that:  he informed the booking officer that he felt unsafe due to secondhand smoke and "prior experiences of how jail officials and prisoners treat Muslim prisoners"; Plaintiff requested protective custody from Cpl. Christine Smith on December 10, 2023, and she responded that Plaintiff did not deserve that; Plaintiff informed CO Flour that he did not feel safe because of her statement that Plaintiff "thinks he is special"; Plaintiff informed Vonveldt that he felt unsafe and would like to speak to the Sheriff to be moved to protective custody; he filed multiple grievances seeking to be moved to a non-smoking unit; on April 8, 2024, Plaintiff mailed a letter to Sheriff Bellendir explaining Plaintiff's mistreatment inside the BCJ, stating that as a Muslin, Plaintiff did not smoke tobacco and would like to be placed in a non-smoking unit, and stating that Plaintiff feared for his safety; on April 14, 2024, BCJ staff conducted a "shake-down cell search" looking for contraband and that Cpl. James Allen informed prisoners that Plaintiff was the cause behind the tobacco sales suspension; and that on April 15, 2024, another prisoner "approached Plaintiff in a threatening gesture of assault and to prevent harm Plaintiff proactively defended himself from assault."

The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims); *see also Contreras on behalf of A.L. v. Dona Ana Cty. Bd. of Cty. Comm'rs*, 965 F.3d 1114, 1116 at n.2 (10th Cir. 2020) (Tymkovich Concurring) (noting that where assaulted party was a pretrial detainee, rather than a convicted prisoner, lawsuit is considered under the Fourteenth Amendment's provision for due process, although the Eighth Amendment's prohibition against "cruel and unusual punishments" guides the court's analysis) (citations omitted).

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions

may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Plaintiff has not alleged long-term exposure to the conditions. Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise

8

to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff has failed to allege facts sufficient to show that any defendant possessed enough details about a threat to enable them to conclude that there was a strong likelihood of injury, not a mere possibility. Although Plaintiff expressed his concern that he felt unsafe, he did not relay any details about a threat to his safety. *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failed to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). "[A]n official's intent matters not only as to what

the official did (or failed to do), but also why the official did it." *Hooks*, 983 F.3d at 1204 (citing *Strain*, 977 F.3d at 992).

In *Brooks v. Easter*, this Court addressed an Eighth Amendment claim based on exposure to environmental tobacco smoke ("ETS"), and dismissed the claim based on qualified immunity. *Brooks v. Easter*, 2021 WL 84168 (D. Kan. 2021). The Court concluded that:

> Plaintiff has failed to show that Easter's alleged actions were contrary to clearly established law. The only case cited by Plaintiff is *Helling* itself, which according to Plaintiff "put Easter on notice that it is unacceptable to expose inmates to unreasonably high levels of secondhand smoke." (Doc. 27 at 6.) But the contours of the right recognized in *Helling* were not explored in that case, at least not in a way that would make it clear to all reasonable jail officials when ETS exposure creates an unreasonable risk to a prisoner's health and when it does not. *Helling* indicates that whether a particular exposure rises to the level of an Eighth Amendment violation is a fact-intensive inquiry dependent upon a number of circumstances. *See Helling*, 509 U.S. at 35-37 (discussing variables that could impact whether ETS exposure constituted an Eighth Amendment violation). Implicit in *Helling's* ruling was the premise that exposure to ETS on a lesser scale or in factual circumstances different from those alleged could fall below the threshold for an unreasonable risk to health, and thus would not violate the Eighth Amendment. A number of courts after *Helling* have recognized the decision "did not establish a constitutional right to a smoke-free prison." *Johnson v. Lappin*, 478 F. App'x 487, 489 (10th Cir. 2012) (citing cases). In *Johnson*, for example, the plaintiff alleged he was exposed to ETS a few times a week over a period of six months. *Id.* at 490. The Tenth Circuit said an allegation that a prisoner with asthma was exposed to minimal levels of ambient smoke does not necessarily state a constitutional claim, noting "[a]sthma conditions vary and courts have held that some asthmatic prisoners may even be permissibly celled with smokers, absent medical orders to the contrary." *Id.* at 492 (citing *Oliver v. Deen*, 77 F.3d 156, 160-61 (7th Cir. 1996)). Plaintiff has not alleged that he had a medical order requiring that he be housed in a nonsmoking cell.

*Brooks v. Easter*, 2021 WL 84168, at *4. The Court noted *Helling's* observation that exposure to an unspecified level of ETS *could* violate the Eighth Amendment, but to prevail, a plaintiff

would have to prove that the level of exposure was in fact excessive. *Id*.

Even if Plaintiff could show that a defendant knew of a substantial risk to his safety, a prison official may be found free from liability if they responded reasonably to the risk. *See Hooks*, 983 F.3d at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")). "[P]rison officials who act reasonably cannot be found liable." *Id*. (citing *Farmer*, 511 U.S. at 845). To prevail, a plaintiff must demonstrate that the prison official "responded unreasonably to the attack." *Id*. (citing *Farmer*, 511 U.S. at 844).

Plaintiff has failed to show that prison officials acted unreasonably in response to his concerns for his safety. Plaintiff's allegations show that staff informed Plaintiff that the protective custody unit was full, but allowed him to be housed alone; staff agreed to email the Sheriff regarding Plaintiff's concerns; and in response to Plaintiff's concerns staff suspended sales of tobacco products inside the jail and ordered BCJ staff to discontinue their usage.

Plaintiff alleges that on or around April 14, 2024, Cpl. James Allen informed prisoners that Plaintiff was the cause behind the tobacco sales suspension, and the following day he had to "proactively defended himself from assault" when another prisoner asked Plaintiff for his knee brace.  However, Plaintiff acknowledges that he was placed in protective custody after the April 15, 2024 incident, and on April 17, 2024, he was transferred to the RCLEC for his protection.  Plaintiff has failed to show that any defendant responded unreasonably in response to any risk to his safety.

Plaintiff also alleges that he was placed in protective custody and disciplinary segregation without being afforded a due process hearing to contest the disciplinary sanctions.  However,

11

§ 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions. *Balisok*, 520 U.S. at 648.

The Court's MOSC provided that "[i]f Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim." (Doc. 5, at 20.) Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the MOSC and fails to state a claim for relief.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated June 5, 2024, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
